UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL JACOBS                                                                                       Plaintiff

v.                                                                                 Civil Action No. 3:17-cv-00090-RGJ

FLOORCO ENTERPRISES, LLC                                                       Defendant

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Floorco Enterprises, LLC's ("Floorco") Motion to Dismiss. [DE 19]. The parties filed a timely Response and Reply. [DE 20; DE 21]. The matter is now ripe for adjudication. For the reasons outlined below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.     BACKGROUND

Floorco is located in Bardstown, Kentucky and operates as a wholesaler of materials used in the construction and installation of hardwood flooring.[1] [DE 18, Am. Compl. at ¶ 5]. Plaintiff, Michael Jacobs ("Jacobs"), was a citizen of Nassau County, New York during the time relevant to this litigation. [*Id.* at ¶ 1]. Jacobs began working as a commission-based independent contractor for Floorco in early 2002. [*Id.* at ¶ 6]. In July 2005, the president and sole owner of Floorco, Paul Tu ("Tu"), offered Jacobs the position of Vice President of Sales and Marketing, a full-time position that would pay $150,000 per year. [*Id.* at ¶¶ 6-8]. Tu presented the offer orally, and

---

[1] The Court accepts as true Plaintiff's statement that Floorco is the successor in interest to Floorco International North America, Inc. [DE 18, Am. Compl. at ¶ 5] and will refer to the Defendant simply as "Floorco" to avoid confusion.

Jacobs accepted orally. [*Id.* at ¶¶ 8-9]. The parties understood that Jacobs would perform the work for an indefinite period. [*Id.* at ¶ 8].

Jacobs's duties included contacting new and existing customers and providing information regarding Floorco products, as well as taking customer orders and arranging for product shipment. [*Id.* at ¶ 11]. Jacobs claims, however, that for large orders, he was required to receive permission from at least two superiors before filling the orders and shipping the product. [*Id.*]. Jacobs lacked the authority to hire and fire, did not supervise two or more employees, or possess discretionary authority in matters of significance. [*Id.* at ¶ 12].

From 2005 through 2008, Jacobs performed his duties, and Floorco paid him the agreed upon $150,000 per year. [*Id.* at ¶ 13]. Jacobs asserts that, around July 16, 2007, Tu transferred all company assets and liabilities into the business now known as Floorco. [*Id.* at ¶ 15]. Jacobs further asserts that Tu reassured him that their prior employment relationship was still in effect, and Floorco would continue to pay Jacobs for performing the same duties. [*Id.*].

But in late January 2009, Jacobs's paychecks began coming up short. [*Id.* at ¶ 16]. Jacobs approached Tu about the discrepancy. Tu informed Jacobs that the company was experiencing hard times, but that Jacobs would be paid back in full if he were patient. [*Id.* at ¶ 16–17]. Floorco continued to short Jacobs intermittently through June 2013, at which time Tu fired Jacobs with Floorco owing Jacobs $287,580.35. [*Id.* at ¶¶ 17, 19]. Upon firing Jacobs, Floorco admitted in writing that it owed Jacobs back wages and made efforts to make good on its debt, paying the balance down to $218,750.02. [*Id.* at ¶ 9 n.2; DE 18-1, Letter from Frieda Bayliss].

Jacobs filed a complaint with the Kentucky Labor Cabinet on December 28, 2015. [DE 18 at ¶ 20]. Tu initially accepted responsibility for the debt and told Labor Cabinet investigator Patricia Major ("Major") that he intended to pay Jacobs the wages owed him in a series of

installment payments. [*Id.*; DE 18-8, Letter from Tu to Major]. Tu continued making these promises until fall 2016, when he abruptly changed course. [DE 18 at ¶ 20]. Kyle Johnson ("Johnson"), counsel for Floorco, informed the Labor Cabinet that Floorco would no longer cooperate with the Labor Cabinet's investigation. [DE 18-11, Johnson Letter]. In this letter, Johnson claimed it was Floorco's position that it did not owe Jacobs any additional money. [*Id.*]. Finally, Johnson claimed that Jacobs had never been an "employee" of Floorco, as that term is defined in KRS Chapter 337. [*Id.*]. The Labor Cabinet closed the investigation on November 10, 2016. [DE 18 at ¶ 20]. This lawsuit followed.

In the Amended Complaint, Jacobs asserts two claims against Floorco. First, Jacobs asserts that Floorco's failure to pay Jacobs was a material breach of an oral employment contract. [*Id.* at ¶¶ 37–41]. In addition, Jacobs claims that Floorco's failure to pay Jacobs violated the Kentucky Wage and Hour Act, KRS Chapter 337. [*Id.* at ¶¶ 42–46]. In the present Motion, Floorco seeks dismissal of both claims. [DE 19].

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III. DISCUSSION

#### A. Breach of Contract

Floorco moves to dismiss Count I for breach of contract because, it argues, Jacobs fails to allege specific facts that, accepted as true, demonstrate the existence of an employment contract. [DE 19-1, Mot. Dismiss]. A breach-of-contract claim under Kentucky law requires: (1) a valid and enforceable contract, (2) a breach of that contract, and (3) damages caused by that breach. *Texas Capital Bank, N.A. v. First Am. Title Ins. Co.*, 822 F. Supp. 2d 678, 682 (W.D. Ky. 2011) (citing *Ward v. Daugherty*, 14 S.W.2d 1089, 1089 (Ky. 1929)). A valid contract requires (1) offer and acceptance, (2) full and complete terms, and (3) consideration. *Zeltiq Aesthetics, Inc. v. Medshare, Inc.*, No. 3:14–CV–213–CRS, 2015 WL 3447612 (W.D. Ky. May 28, 2015) (citing

*Coleman v. Bee Line Courier Serv., Inc.*, 284 S.W.3d 123, 125 (Ky. 2009)). An employee can establish an employment contract in one of two ways. *McNutt v. Mediplex of Ky., Inc.*, 836 F. Supp. 419, 420 (W.D. Ky. 1993). First, the employee can accept an offer of employment for a fixed period. *Id.* (citing *Otis & Co. v. Power*, 1 Ky. Op. 312 (Ky. 1886)). Alternatively, the employee and employer may enter into a contract for an indefinite period but with a covenant not to terminate the employee without cause. *Id.* (citing *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489 (Ky. 1983)).

Jacobs's Amended Complaint asserts that "[o]n July 1, 2005, Jacobs and Tu entered an oral contract of employment." [DE 18 at ¶8]. "Tu stated that the offer of employment was intended to be indefinite and ongoing, with no set term or limitation as to the length of the employment." [*Id.*]. But Jacobs also concedes that his employment was at-will. [*Id.* at ¶ 41 ("Plaintiff does not assert that Floorco had any obligation to continue his employment…")]. Thus, Tu and Jacobs entered an oral agreement for an at-will employment relationship of unknown duration.

Accordingly, Jacobs cannot establish a valid employment contract since the oral agreement was neither for a fixed period nor an indefinite period with a covenant not to terminate without cause. *McNutt*, 836 F. Supp. at 420. Nor has Plaintiff alleged any other fact that compels a different conclusion. The Court must examine the parties' intent in light of the circumstances surrounding the transaction. *Shah*, 655 S.W.2d at 490. While it is clear that Tu intended to create an employer/employee relationship with Jacobs, nothing indicates that either party intended to enter into an employment contract. Tu offered an annual salary, but this alone cannot create an inference that an employment contract exists. *See McNutt*, 836 F. Supp. at 422. Similarly, while Floorco's Chief Financial Officer, Simon Chik, sent an email to Freida Bayliss acknowledging

Tu's hiring Jacobs at $150,000 per year, this email is only probative of the existence of an employment relationship, not of an employment contract. [DE 18-3, Letter from Simon Chik].

Jacobs attempts to analogize his employment relationship with that of a fast-food fry cook. [DE 20, Resp. at 4–5]. The trouble with the hypothetical is that the fast-food worker with an employment agreement for an hourly rate, terminable at-will and for an unspecified period, like Jacobs, does not have an employment contract. *See McNutt*, 836 F. Supp. at 420. He therefore would have no cause of action for breach of contract in the event his pay was shorted. He would, however, have labor law protections assuming he was a covered employee. And, more relevant to the current case, the fast-food worker could plead equitable remedies such as promissory estoppel or unjust enrichment, both of which Kentucky law recognizes. *See Meade Constr. Co. v. Mansfield Commercial Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979) (noting that Kentucky has adopted test for promissory estoppel from Restatement (Second) of Contracts § 90); *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009) (stating the elements of unjust enrichment). Thus, Jacobs's hypothetical misses a critical point. The fast-food worker may not have a contractual claim against his employer, but he is not altogether without remedy.

Here, Jacobs could have pleaded equitable remedies. But he failed to do so. The claim for breach of contract is therefore dismissed with prejudice.

B.     **Jacobs's Rights Under KRS 337.355**

Kentucky law provides that "[a]ny employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned by him; not later than the next normal pay period following the date of dismissal or voluntary leaving or fourteen (14) days following such date of dismissal or voluntary leaving whichever last occurs." KRS 337.055. The employer may be liable for the full amount of unpaid wages, an equal amount in liquidated damages, costs,

and reasonable attorney's fees. KRS 337.085. For purposes of this action, the term "employee" means "any person employed by or suffered or permitted to work for an employer, but shall not include… [a]ny individual employed in a bona fide executive, administrative, supervisory, or professional capacity, or in the capacity of outside salesman, or as an outside collector as the terms are defined by administrative regulations of the commissioner…" KRS 337.010(2)(a); KRS337.010(2)(a)(2); *Fox v. Lovas*, No. 5:10-CV-00219-R, 2012 WL 1567215, at *2 (W.D. Ky. May 1, 2012). It is ultimately the plaintiff's burden to establish that he is an employee under Kentucky law. *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n ex rel. Kaelin*, 212 S.W.3d 89, 94 (Ky. 2006).

Floorco argues that Jacobs's complaint fails as a matter of law to establish that he was a nonexempt employee under KRS 337.010(2)(a)(2). [DE 19 at 6–7]. The amended complaint states that Jacobs's job duties included contacting new and repeat Floorco customers, providing them with information about company products, taking purchase orders, and arranging for shipment of those orders. [DE 18 at ¶ 11]. Jacobs further notes that he did not exercise independent discretion and had to seek approval for large orders and shipments. [*Id*.]. Additionally, Jacobs claims that he lacked the authority to hire and fire employees, did not supervise two or more employees, and did not exercise discretion with respect to matters of significance. [*Id*. at ¶ 12].

Floorco draws the Court's attention to *Burton v. Appriss, Inc.*, No. 3:13-CV-00316-CRS, 2013 WL 6097107 (W.D. Ky. Nov. 19, 2013). Floorco appears to suggest that the Court in *Burton* held that the employee bears the burden of conclusively establishing its employee status in the complaint itself. [DE 19 at 8]. This is incorrect. Instead, *Burton* concerned an employee whose complaint defined her duties as being "primarily responsible for promoting sales of Defendant's products to individual customers of Defendant," and was involved in "upselling her assigned

7

customers and managing those customer's [sic] accounts." *Burton*, at *5 (internal quotation omitted). The Court noted that "[f]rom these statements alone, this court is unable to conclude at this time whether Burton and the Class Members are 'employees,' as that term is defined in KRS § 337.010(2)(a)(2)." *Id*. The Court concluded that, while the burden ultimately rested with Burton to prove that she was a nonexempt employee, the facts outlined in her complaint were sufficient to survive a 12(b)(6) motion to dismiss. *Id*.

While Jacobs's title, "Vice President of Sales and Marketing," suggests employment in an "executive, administrative, supervisory, or professional capacity," it is unclear from his job description whether his employment falls into the excluded categories of employees under KRS 337.010(2)(a)(2). This Court thus concludes that Jacobs has alleged sufficient facts to survive a 12(b)(6) motion to dismiss. *See id.*; *Goodwin v. Novartis Pharm. Corp.*, No. 3:11-CV-00350-JGH, 2012 WL 1079086 (W.D. Ky. Mar. 30, 2012) ("The Court cannot conclude whether [plaintiff] is exempt […] based solely on the Complaint and limited pleadings. Although Plaintiff must ultimately establish her right to recover under § 337.385 as a non-exempt employee and the amounts owed, the Court concludes Plaintiff has adequately pleaded her statutory wage claim."). Accordingly, the Motion to Dismiss the claim for violation of KRS §337.010 *et seq*. will be denied.

## IV. CONCLUSION

For the foregoing reasons, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** that Defendant's Motion to Dismiss [DE 19] is **GRANTED IN PART** and **DENIED IN PART**. Count I for breach of contract is **DISMISSED WITH PREJUDICE**.

Cc: counsel of record