UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| MICHAEL JACOBS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:17-CV-90-RGJ |
| ) | |
| FLOORCO ENTERPRISES, LLC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO RENEWED MOTION TO COMPEL THE DEPOSITION OF PAUL TU**

Comes now the Plaintiff, Michael Jacobs, by counsel, and replies as follows to the the Defendant's Response to the Renewed Motion to Compel the Deposition of Paul Tu [D.N. 86, 10/1/19]:

### I. THE DECLARATION OF PAUL TU IS NOT CREDIBLE & A REMOTE DEPOSITION FROM HONG KONG IS NOT PRACTICABLE

The Declaration of Paul Tu [D.N. 86-11] is not credible, and demonstrates Mr. Tu's pattern of deception in this case. Tu states that he had no idea that he was prohibited from leaving China until he attempted to board a plane to Hong Kong. This assertion is flatly contradicted by defense counsel's emails from August 7, 2019 [D.N. 75-8] and August 27, 2019 [D.N. 75-10], which indicate that Tu had extensive prior knowledge that he was restricted from leaving the country.[1] Tu's assertion is further belied by the "Legal

---

[1] Tu's behavior sheds further light on why the Defendant was so unresponsive and evasive during the first six months that Plaintiff repeatedly attempted to schedule Tu's deposition prior to the filing of the first motion to compel. [D.N. 75-1 & 75-3]. Based upon the Legal Opinion of Tu's Chinese lawyers [D.N. 86-12] which indicates that Tu's legal troubles had been pending since 2016, it appears likely Tu knew all along he (Tu)

Opinion" of his Chinese lawyers [D.N. 86-12] which seems to indicate that these restrictions have been in place since 2016. Tu's deception corroborates Plaintiff's argument that Defendant's offer to conduct the deposition from Hong Kong (either last summer when he first suggested it, or at any time within the foreseeable future) is an illusory promise designed (1) to cause further delay; and (2) to hold up the appearance in Court that Tu is cooperating, despite knowing full well that his offer presents a practical impossibility.

The Defendant's suggestion that Plaintiff should simply wait until Tu's travel ban is lifted and then proceed at that time with a remote deposition in Hong Kong is not a viable option. Tu's declaration omits any mention of any timeframe for the travel restrictions being lifted.[2] Furthermore, the Defendant's argument on this point completely ignores the ongoing and escalating political problems in Hong Kong[3] which would prohibit Tu from travelling there for the foreseeable future. The Defendant's plan would effectively put the trial of this matter on hold for an unknown number of months, or even years. While such an outcome may be desirable for Mr. Tu, the Plaintiff does not wish to lose his March 2020 trial date, (which he has been patiently waiting for since this lawsuit began in January of 2017).

---

was prohibited from travelling to the U.S., but didn't want to admit it. Rather than being straightforward about his Chinese legal troubles so the location of the deposition could be resolved in a timely manner, the Defendant has waited until less than six months before the trial date to divulge this information, leading to further delays in the case.

[2] This stands in stark contrast to what Tu apparently told his lawyers on August 7, 2019, when the goal was to convince Plaintiff's counsel to agree to taking the deposition in Hong Kong—that the travel restrictions would be lifted within two weeks. [D.N. 75-8].

[3] *See* Elaine Yu, Tiffany May, & Mike Ives, *Hong Kong's Hard-Core Protestors Take Justice Into Their Own Hands*, N.Y. Times, October 7, 2019, https://www.nytimes.com/2019/10/07/world/asia/hong-kong-protesters-masks-violence.html

## II. THE DEFENDANT HAS PRESENTED NO CONVINCING AUTHORITY THAT A REMOTE DEPOSITION IN CHINA IS LEGAL OR FEASIBLE

The Defendant argues that the deposition could take place remotely from China, if not for the Plaintiff's intransigence. The State Department's warning [D.N. 75-5] is unequivocal. The plain language prohibits depositions in China (unless the Hague Convention is utilized—more on that point in Section III below). The warning states: "China has indicated that taking depositions, whether voluntary or compelled, and obtaining evidence in China for use in foreign courts…could result in the arrest, detention, or deportation of the American attorneys and participants." The warning draws no distinction between in-person and remote depositions; however, the Defendant cites three authorities in support of its contention that remote depositions are outside the scope of the rule. The first document is the purported "Legal Opinion" of Mr. Tu's Chinese law firm. [D.N. 86-12]. The original document is written in Chinese, is not printed on any type of letterhead, contains neither the name nor the signature of the author, nor any sort of notarization. The second page of the document is a similarly unsigned English version of the document purportedly translated by some unknown Chinese-speaking lawyer at Defense Counsel's law firm. This document and its contents cannot be authenticated or verified in any manner, and does not meet the standard for a sworn declaration, affidavit, or credible evidence of any type. *See, e.g.*, *Alexander v. Caresource*, 576 F.3d 551, 561 (6th Cir. 2009)(unsigned documents not printed on company letterhead are neither self-authenticating, nor admissible). Neither the Chinese document nor its purported English translation bear any of the indicia of reliability needed for the Court to take them seriously.

The documents do not constitute any type of credible authority, and the Court should disregard them in their entirety.

The second authority cited by the Defense on this point is an email from the U.S. Embassy in Beijing on 8/1/19. [D.N. 86-13]. This email reads, "Dear Souhila, [t]hank you for the email. It is unclear whether a remote deposition would be covered/allowed. Given this uncertainty, it would be difficult to get such a procedure approved by both a Chinese central authority or the Department of State." Rather than supporting the Defendant's argument that remote depositions are legal in China, this email actually bolsters the Plaintiff's argument to the contrary. At best, there is an open question as to whether such depositions are legal, and even if they were technically legal, it is apparently difficult, if not impossible, to get them approved. The email adds no weight to the Defendant's claims.

The third authority cited by the Defense on this point is the case of *Secalt S.A. & Tractel, Inc., v. Wuxi Shenxi Construction Machinery Co., Inc.,* 2010 WL 11579041 (D.Nev. May 28, 2010). That case, arising from the federal district court in Nevada, involved a similar dispute in which the Defendant wished to conduct remote depositions where the witnesses were located in China and the attorneys were located in the U.S. The Plaintiff objected on grounds that such depositions are illegal under Chinese law. *Id.* at 1. The court disregarded the plaintiff's concerns, and ruled that the depositions could proceed remotely from China. *Id.* That case is distinguishable from the present case because the court did not have the benefit of the information contained in the two warnings from the U.S. Embassy which are available in this case. Rather, the issue seems to have been raised by Plaintiff's counsel on the fly at oral arguments without any

authority to back it up.  *Id.*  The issue was never briefed, and the court's holding on this issue contains no legal analysis.  In any event, the Nevada court's ruling is not binding on this court, nor is it persuasive, given the lack of detail and discussion on this topic found in the court's opinion.

Finally, even if the Defendant is correct that Chinese law is vague enough to exclude remote depositions from the general prohibition, (or in the alternative, that that there is miniscule risk to the lawyers involved in violating the law since Chinese authorities lack the means to arrest or effectively sanction persons located outside their country), the Defendant's arguments still ignore the fact that the deposition has proved to be logistically impossible due to the lack of any local court reporter willing to participate.  It is telling that in the three months since this dispute first arose, the Defendant has not located a single court reporter competent, willing, and able to facilitate such a deposition.  [*See* D.N. 81-1].  And the only Louisville-based court reporter the parties have found with international remote teleconferencing capabilities has flatly refused to participate based on the Embassy's warning.  [D.N. 75-5].  Therefore, even if the illegality of such depositions under Chinese law is of no concern to the Defense, it is of great concern to court reporters who apparently do not wish to risk criminal sanctions, and who have not been swayed by Defendant's supposed loophole.  Thus, the Defendant's argument that the deposition can and should proceed remotely from China has proven unfeasible.  Without a court reporter, the Plaintiff has no practical means to record, transcribe, and utilize such a deposition for future proceedings in this case.

### III. SPECIAL CIRCUMSTANCES EXIST IN THIS CASE EXIST WHICH MAKE KENTUCKY THE PROPER VENUE FOR THE DEPOSITION

The Defendant correctly argues that absent special circumstances, the party seeking the discovery must normally travel to the location where the witness resides to conduct a deposition there. However, there are a number of factors[4] which taken together as a whole constitute special circumstances which justify an exception to the rule in this case: (1) the Deponent, Tu, is not a disinterested third party, but instead the corporate president and is uniquely qualified above all other Floorco officers and employees to explain why Jacobs was shorted on his full salary and was ultimately terminated from the company; (2) The Defendant has submitted two sworn declarations from Tu in this case [D.N. 43-1 & D.N. 86-11]; (3) The parties have operated under the federal rules (as opposed to the Hague Convention) on all matters since the inception of the case; (4) The Defendant has intentionally inserted itself into the stream of commerce in Kentucky, holds a corporate license to do business here, and intends to continue to do business here in the future; (5) Kentucky has a strong public policy interest in ensuring that employers comply with its wage and hour laws; (6) Counsel for both parties are located in Kentucky; (7) Floorco is a corporation with nearly limitless resources and is far more capable of bearing the burden of international travel than the Plaintiff, a lone individual.[5] (8) Travelling to China to conduct the deposition in person pursuant to the Hague Convention is impossible or at

---

[4] These factors are drawn from the two cases Plaintiff cited in his renewed Motion to Compel, [D.N. 75], *Recaro N. Am., Inc., v. Holmbergs Childsafety Co.*, 2011 U.S. Dist LEXIS 123978 (E.D. Mich., Nov. 22, 2011) & *Meyer v. Photofax, Inc.*, 2009 WL 1850609 (E.D. Ky. June 26, 2009).

[5] The Defendant correctly points out that a financial disparity between the parties should not be the lone or deciding factor when deciding the proper location for a deposition. Here, it is merely one of eight factors utilized in a totality of circumstances approach.

least highly unlikely.[6]

The Defendant argues that because the Plaintiff noticed Tu's deposition pursuant to FRCP 30(b)(1) as opposed to FRCP 30(b)(6), the Plaintiff's argument is fatally deficient. However, in the context of deciding whether an officer of a foreign corporate officer can be ordered to the travel to the U.S. for a deposition, the caselaw makes no distinction between the two rules. See *Recaro N. Am., Inc., v. Holmbergs Childsafety Co.*, 2011 U.S. Dist LEXIS 123978 (E.D. Mich., Nov. 22, 2011) at 4; *In re Auto. Parts Antitrust Litig.*, 2016 WL 8115414 (E.D. Mich., May 2, 2016) at 163-64; *see also McClurg v. Zurich American Ins. Co.*, 2012 WL 13006215 (D.S.C. Oct. 31, 2012) at 2.

Finally, the Defendant argues that Court should not compel Tu to travel to the U.S. for his deposition due to the travel restrictions imposed on him by the Chinese legal system. The Defendant argues that it would be impossible for Tu to comply with any such order because he has been barred from leaving China. Thus, the Defendant argues, it would be unfair to order him to come here when he is being legally detained by his own government. The Defendant's argument begs the obvious question of what it intends to do if the travel restrictions are still in place at the time of the trial of this matter, just five months away? If the Defendant's argument is taken to its logical conclusion, this litigation

---

[6] The Defendant suggests that the Plaintiff should travel to China and conduct an in-person deposition of Mr. Tu pursuant to the Hague Convention procedure. Although the Plaintiff has been unable to locate any caselaw directly on point, there is evidence from secondary sources and other legal authorities which strongly suggest otherwise. *See* Sun Woo Kim, *Deposing Witnesses In China*, April 9, 2018, http://www.anallp.com/index.php/index/article/aid/255.html ("Despite the fact that these formal, official vehicles for obtaining discovery exist, according to U.S. officials, in more than 30 years under the Consular Convention and 13 years under the Hague Convention, China has only granted permission for taking such a deposition on one occasion. In fact, those who participate in unauthorized depositions can result in serious sanctions ranging from arrest, detention, or deportation."); *See also* Craig Allely, *Global Litigator: Successful Depositions in International Litigation*, American Bar Association Litigation Journal, June 1, 2011, https://www.americanbar.org/groups/litigation/publications/litigation_journal/2010_11/summer/global_litigator/ (permission for a deposition in China under the Hague Convention granted only one time in 13 years)

would be postponed as long as Mr. Tu's detention drags on. Indeed, the Defendant could use the excuse of Tu's detention[7] as a means of indefinite delay of the trial date. This Court should not allow the Defendant's legal troubles in China to dictate when and how he will testify in this matter. *See Flame S.A. v. Industrial Carriers, Inc.*, 2014 WL 4181958 (E.D. Va. Aug. 21, 2014) at 2 ("[The foreign government's] determination depends upon factors beyond this Court's control and remains a hypothetical, third-party action resting on many uncertain variables. The Court cannot allow inchoate possibilities to dictate the presentation of evidence in its courtroom.") The Defendant has cited no authority in support of the proposition that a witness' inability to appear due to legal troubles abroad should factor into its analysis of the location where the witness' deposition should take place, and nothing in the caselaw suggests it should be otherwise. If the Court orders Tu to appear and he fails to do so, there are various remedies the Plaintiff can seek, and the parties can cross that bridge when they get there. Such an approach will keep this case on track progressing towards its March 2020 trial date, regardless of Tu's ability to travel to the United States.[8]

### IV. CONCLUSION

The Defendant takes issue with the Plaintiff's use of the word "gamesmanship" in his renewed motion to compel. In order to understand the Plaintiff's position in this regard, it is necessary to look at the history of this case in a broader context. From approximately

---

[7] It must be noted that the Defendant has provided no official documentation whatsoever of who has imposed this travel restriction, why it has been imposed, or when it is expected to end.

[8] Plaintiff would be willing to forego taking Tu's deposition altogether if Tu is not going to be called by the Defense as a witness at trial. The situation that Plaintiff seeks to avoid is one in which Tu manages to avoid being deposed until the eleventh hour, only to have his travel restrictions magically evaporate a day or two before trial, leaving the Defense free to call him as a live before the jury without the Plaintiff ever having had the opportunity to hear his testimony in advance.

2009 when Jacobs' paychecks first started coming up short until 2016 when the Kentucky Labor Cabinet closed its investigation into Jacobs' complaint, Paul Tu made repeated promises that Jacobs would be repaid in full for more than $200,000 that was owed to him in back salary.  These assurances proved to be hollow words designed to dissuade Jacobs from taking legal action for as long as possible.  Likewise, from November of 2018 until May of 2019, Tu strung the Plaintiff along, allowing him to believe his deposition would take place in the U.S., despite knowing he was prohibited from leaving China.  In short, Tu is a master of delay and deception.  The Defendant's position is essentially, "We don't oppose Paul Tu's deposition.  We're just gonna make it impossible for it to actually occur prior to the trial date."  Tu's offer to submit to a deposition from China (despite knowing that it is illegal in his country to do so and that the logistics are impracticable) or from Hong Kong, (despite knowing he cannot travel there) have had one purpose:  to provide ammunition for the argument that the Defendant is cooperating with the discovery process, when in fact, the true goal was to prevent the Court from taking up this motion to compel for as long as possible.  Thus, the Plaintiff stands by his characterization of the Defendant's actions as "gamesmanship".

      The idea of remote depositions from either China or Hong Kong has proved impracticable, and an in-person deposition taking place in China pursuant to the Hague Convention is by all accounts, prohibited.  Accordingly, extraordinary circumstances exist in this case justifying the Court's variance from the traditional rule that the witness should be deposed where he resides.  Given the totality of the circumstances, Mr. Tu should be ordered to travel to Kentucky for his deposition, and the Plaintiff's Renewed Motion to Compel should be granted.

Respectfully submitted,

/S/ *Andrew S. Epstein*
ANDREW S. EPSTEIN
Bahe, Cook, Cantley, & Nefzger
1041 Goss Avenue
Louisville, Kentucky 40217
(502) 587-2002 – Telephone
(502) 587-2007 – Fax
andrew@bccnlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the CM/ECF system on counsel of record this 14th day of October 2019.

Further, a true and correct copy was sent via email to:

Kyle D. Johnson
Souhila El Moussaoui
FROST, BROWN, TODD, LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
kjohnson@fbtlaw.com
selmoussaoui@fbtlaw.com
*Counsel for the Defendant*

/S/ *Andrew S. Epstein*
ANDREW S. EPSTEIN